# EXHIBIT A

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**08/09/2021** at 03:11:09 PM

Clerk of the Superior Court
By Melissa Valdez,Deputy Clerk

1 | MARK F. HUMENIK (SBN 231917)
mhumenik@polkkabat.com
2 | POLK KABAT, LLP
423 S. Estate Dr.
3 | Orange, California 92869
Telephone:     (949) 636-5754
4 | Facsimile:     (216) 241-0705

5 | SHANNON J. POLK (Ohio 0072891)[1]
spolk@polkkabat.com
6 | DANIEL M. CONNELL (Ohio 0078418)
dconnell@polkkabat.com
7 | POLK KABAT, LLP
1300 West 78th Street, Suite 305
8 | Cleveland, Ohio 44102
Telephone:     (216) 241-0700
9 | Facsimile:     (216) 241-0705

10 | Attorneys for Plaintiff

11 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

12 | COUNTY OF SAN DIEGO

13 |
JACQUELINE KALTER,
14 |

15 |                       Plaintiff,

16 |           vs.

17 | KEYFACTOR, INC.;

18 | INSIGHT VENTURE MANAGEMENT, LLC;

19 | INSIGHT VENTURE MANAGEMENT, INC.;

20 | and DOES 1 through 20, inclusive,

21 |                       Defendants.

Case No.  37-2021-00034022-CU-WT-CTL

**COMPLAINT**

**(1) AGE DISCRIMINATION; (2) FAILURE TO PREVENT DISCRIMINATION; (3) ASSOCIATIONAL DISCRIMINATION; (4) BREACH OF CONTRACT; (5) BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (6) FAILURE TO PAY MINIMUM WAGES; (7) FAILURE TO PAY ACCRUED TIME OFF; (8) FAILURE TO PAY WAGES AT TERMINATION; (9) FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS; (10) FAILURE TO REIMBURSE BUSINESS EXPENSES; (11) RETALIATION; AND (12) UNFAIR BUSINESS PRACTICES**

Date Action Filed:
Department:
Judge:

---

[1] Attorneys Shannon Polk and Daniel Connell will file applications for permission to appear *pro hac vice* in this action pursuant to Cal. Rule of Court 9.40.

---

COMPLAINT

**Exhibit A - Page 16**

Plaintiff Jacqueline Kalter ("Plaintiff" or "Kalter") alleges, on the basis of personal knowledge and/or upon information and belief, as follows:

**PARTIES**

1. Kalter is a resident of San Diego County and a former employee of Defendant Keyfactor, Inc.

2. Defendant Keyfactor, Inc. ("Keyfactor") is a Delaware corporation, with its principal place of business in Cleveland, Ohio. Keyfactor designs, develops, and sells secure digital identity management solutions to businesses and customers throughout North America.

3. Keyfactor is an "employer" as that term is defined by Government Code §12926(d). Keyfactor is a "person" as that term is defined by Government Code §12925 and Labor Code §18, and is also an "employer" as defined by the applicable Wage Order.

4. In addition, Keyfactor compelled, coerced, aided, and/or abetted the discrimination alleged herein, which conduct is prohibited by Government Code §12940(i).

5. Keyfactor was formerly known as Certified Security Solutions, Inc. Upon information and belief, in or about November 2018, Certified Security Solutions, Inc. rebranded itself as Keyfactor.

6. Certified Security Solutions, Inc. formally changed its name to Keyfactor, Inc. around July 2019.

7. At all relevant times, neither Keyfactor nor Certified Security Solutions, Inc. has been lawfully registered with the California Secretary of State as required to do business within California.

8. Kalter was employed by Keyfactor and/or Certified Security Solutions, Inc. as its District Sales Director, West from around March 4, 2019 through her termination on February 10, 2020. Kalter was 55 years old when Keyfactor fired her without notice or cause.

9. Defendant Insight Venture Management, LLC is a Delaware limited liability company, with its principal place of business in New York. The primary business address of Insight Venture Management, LLC is 1114 Avenue of the Americas, 36th Floor, New York, NY 10036.

10.     Defendant Insight Venture Management, Inc. is a Delaware corporation, with its principal place of business in New York. The primary business address of Insight Venture Management, Inc. is exactly the same as that of Insight Venture Management, LLC: 1114 Avenue of the Americas, 36th Floor, New York, NY 10036. Collectively, Defendants Insight Venture Management, LLC and Insight Venture Management, Inc. will be referred to as "Insight" in this Complaint.

11.     Insight also is known to do business under the related fictitious business name(s), or through one or more related entities, known as Insight Venture Partners, LP, Insight Partners, or Insight Venture Partners.

12.     One or more of the Insight entities is an "employer" as that term is defined by Government Code §12926(d). One or more of the Insight entities is a "person" as that term is defined by Government Code §12925 and Labor Code §18, and one or more of the Insight entities is also an "employer" as defined by the applicable Wage Order.

13.     In addition, one or more of the Insight entities compelled, coerced, aided, and/or abetted the discrimination alleged herein, which conduct is prohibited by Government Code §12940(i).

14.     Upon information and belief, Insight, either directly and/or through one or more related entities controlled by Insight, made an approximately $77 million investment in Keyfactor during 2019.

15.     As part of Insight's investment transaction with Keyfactor, at least three Insight executives, officers, representatives, agents, or employees obtained seats on Keyfactor's Board of Directors.

16.     As part of Insight's investment transaction with Keyfactor, Insight received authority to hire and appoint executives at Keyfactor. Insight also gained day-to-day management oversight, input, or control of Keyfactor's operations.

17.     At all relevant times, one or more of the Insight entities was not registered with the California Secretary of State as required to do business within California.

18.     Kalter is informed and believes and thereupon alleges that Defendants Keyfactor

and one or more of the Insight entities, and each of them, are subject to such a degree of common ownership, control and management that, in doing the things hereinafter alleged, each entity or corporation was the agent of each other entity or corporation and is liable to Plaintiff for the damages sustained by Plaintiff or for the compensation, restitution, or penalties owed to Plaintiff.

19.     Kalter is informed and believes and thereupon alleges that Defendants Keyfactor and one or more of the Insight entities were her employers or joint employers, that Keyfactor and one or more of the Insight entities did acts consistent with the existence of an employer-employee relationship with Plaintiff, and that Keyfactor was owned and controlled, directly or indirectly, by Insight.

20.     At all times relevant hereto, each of the Doe Defendants 1 through 20 was the agent, employer, affiliate, integrated enterprise, supervisor, servant, employee, joint venture, aider, abettor, co-conspirator, and/or alter ego of each remaining Defendant, and acted with the permission, consent, participation, and/or ratification of each remaining Defendant, and within the course and scope of said agency, employment, enterprise, venture, and/or conspiracy.

21.     Does 1 through 20 are sued in their fictitious names pursuant to Code of Civil Procedure section 474 because their true names and capacities are currently unknown. Kalter reserves the right to amend this Complaint to identify and name these unknown parties if and when they become known at any point during this litigation.

22.     All Defendants compelled, coerced, aided and/or abetted the discrimination and unlawful behavior alleged in this Complaint, which conduct is prohibited under Government Code section 12940(i). All Defendants are responsible for the events and damages alleged herein, including on the following bases: (i) Defendants committed the acts alleged; (ii) at all relevant times, one or more of the Defendants was acting as the agent or employee, and/or acted under the control or supervision, of one or more of the remaining Defendants and, in committing the acts alleged, acted in the course and scope of such agency or employment and/or is or are otherwise liable for Plaintiff's damages; (iii) at all relevant times, there existed a unity of ownership and interest between or among two or more of the Defendants such that any individuality and separateness between or among those Defendants had ceased, and Defendants are the alter egos of

one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of Defendants does not, and at all times herein did not, exist. Adherence to the fiction of the separate existence of the Defendants would permit abuse of the corporate privilege and would sanction fraud and would promote injustice. All actions of all Defendants were taken by employees, supervisors, executives, officers, and directors during employment with all Defendants, were taken on behalf of all Defendants, and were engaged in, authorized, ratified, and approved of by all other Defendants.

## JURISDICTION AND VENUE

23.     Venue is proper in this Court under California statutory, decisional, and regulatory law because all or part of the cause(s) of action arose in this County, Defendants Keyfactor and/or one or more of the Insight entities each transact business in this County, one or more of Defendant's obligations arose in this County, Plaintiff performed work for Defendants in San Diego County, Plaintiff would have continued working for Defendants in San Diego County but for the unlawful conduct alleged herein, and the events giving rise to Plaintiff's claims and the liability creating conduct of one or more Defendants occurred in this County.

24.     This Court has jurisdiction over Plaintiff's claims which are based upon California statutory and common law.

## FACTUAL ALLEGATIONS

25.     Kalter was hired and began working at Keyfactor around March 4, 2019 as the company's District Sales Director, West. Kalter was responsible for marketing and selling Keyfactor's secure digital identity management solutions to clients, prospective clients, and customers in the Western region of the United States, including California, Oregon, Washington, Arizona, Nevada, Utah, New Mexico, Colorado, Wyoming, Idaho, and Montana.

26.     At all relevant times, Kalter was qualified for the position of District Sales Director.

27.     Upon her hiring, Kalter initially reported to Bill Brunson, Vice President of Field Operations for North America. Upon information and belief, Brunson was in his mid-50s when Plaintiff reported to him.

28.     Insight, a venture capital firm out of New York City with over $20 billion in assets under management which aims for "exponential growth" in its portfolio companies, made an investment in Keyfactor in early 2019 of approximately $77 million.

**Keyfactor and Insight Implement Strategic Initiatives to Remake Keyfactor as a Vibrant, Young Company**

29.     Around May 2019, Insight appointed Jordan Rackie, then age 33, as Keyfactor's Chief Executive Officer (CEO).

30.     Rackie is approximately 20 years younger than Keyfactor's prior CEO whom Rackie replaced.

31.      Around August 2019, Keyfactor (with the approval of Insight and Rackie) hired Dan Michael as its Vice President of Sales/Field Operations to replace Brunson. As Vice President of Sales/Field Operations, Michael had direct supervisory authority and responsibility over Plaintiff and all of Keyfactor's Directors of Sales throughout the country.

32.     Upon information and belief, Michael is in his mid-40s and is approximately 10 years younger than his immediate predecessor as Vice President of Sales/Field Operations at Keyfactor.

33.     After Michael and Rackie joined Keyfactor's executive leadership team, various members of leadership at Keyfactor made comments reflecting the corporate preference for hiring younger employees and remaking Keyfactor as a vibrant, young company.

34.     Mary Mathews, Keyfactor's Director of Human Resources and Business Operations, made age-related comments that were indicative and reflective of a corporate mindset favoring younger employees.

35.     Consistent with management's remarks about favoring a younger workforce, in late 2019, Michael hired Kimberly Chu as a Sales Director for Keyfactor. Upon information and belief, Chu is believed to be approximately 20 years younger than Plaintiff.

36.     Upon information and belief, Chu is a resident of California and has been performing services in California and selling products to California-based customers and businesses on Keyfactor's behalf throughout her employment with Keyfactor.

37.     Shortly after hiring Chu in late 2019, Keyfactor reassigned many of the accounts and a portion of the sales territory in the Western region that Kalter had been servicing to Chu.

**Kalter Is Unlawfully Terminated and Replaced by a Substantially Younger Employee**

38.     Kalter was terminated on February 10, 2020 at the age of 55. At the time of her termination, Kalter was expected to close significant sales deals that would have generated sizable commissions for her in 2020 and beyond, and achieve her expected sales targets.

39.     After she was terminated, Kalter's job duties and the remainder of Kalter's accounts and the Western territory were assigned to and assumed by a far younger employee, Chu.

40.     Chu received, and continues to receive, sales credit and sizable commissions from many of the accounts and customers that Kalter initially identified, solicited, and/or secured purchase commitments from during Plaintiff's employment at Keyfactor. These commissions were earned by Kalter, who had perfected her right to payment pursuant to her agreement with Keyfactor.

41.     In large part due to Kalter's prior work and sales efforts plowing the ground, Chu's "Net ARR Bookings" in 2020 totaled nearly $3,000,000 (more than five times higher than Chu's sales quota for the Western region), the highest revenue generation figure of any Sales Director at Keyfactor during 2020 by a substantial margin.

42.     Had Kalter not been unlawfully terminated (such that Kalter's pre-existing accounts and sales territory would have remained under her supervision/control and not reassigned to Chu), Kalter's "Net ARR Bookings" in 2020 would have been the highest of any Sales Director at Keyfactor for the calendar year.

43.     Keyfactor management took additional steps to overhaul its sales team and remake Keyfactor as a vibrant young company. Chief among them was the systematic terminations of other sales directors in different parts of the country who were over 40 years of age.

44.     During 2019 and 2020, each of the Sales Directors who separated from employment with Keyfactor was over 40 years of age.

45.     And in each instance where the terminated sales director was replaced, whether

directly or indirectly, the new sales director was substantially younger than the terminated sales director. For instance: (1) Keith Hanna, a Director of Sales in the Southeast region who is in his late 50s, was terminated in Summer 2019 and replaced by John Plato, who is substantially younger than Hanna; (2) Tina Palmer, a Director of Sales in the "TOLA" territory covering Texas, Oklahoma, Louisiana, and Arkansas, was in her mid-50s when she was terminated and replaced by an employee who is at least ten years younger; and, (3) John Polcari, a Director of Sales in the Northeast region who is over 40 years old, was terminated in the fall of 2020 and replaced by or had his prior job duties assumed by one or more substantially younger sales directors, both of whom are at least ten years younger than Polcari.

46.     In 2020, Keyfactor terminated a Sales Director in Canada and a Sales Director in Chicago, both of whom were in their 50s.

### **Keyfactor Routinely Flouts the California Labor Code**

47.     When Kalter initially was interviewed for potential employment with Keyfactor, she was told that she could earn lucrative sales commissions if she achieved sales targets, with the understanding and acknowledgement by Brunson, Keyfactor's Vice President of Field Operations at the time, that the typical sales cycle (from initiation to closing) at Keyfactor generally ranged from 12 to 18 months.

48.     Given the relatively lengthy sales cycle to procure and close new business, Kalter requested a guaranteed, non-recoverable draw against future commissions during her first six months of employment. Keyfactor agreed to that request, promising a non-recoverable draw against commissions totaling $22,500 during her first six months of employment as she ramped up her sales generation activity.

49.     Brunson also told Kalter in sum and substance that she could earn significant commissions over time at Keyfactor, including as much as two or three times the amount of her annual salary, if she was patient, hard-working, and dedicated to the company's long-term success while Keyfactor established itself as an emerging leader in the digital identity management solutions industry.

50.     In addition to a salary, the prospect of lucrative commissions, and a $22,500 non-

recoverable draw, Keyfactor also promised several fringe benefits to Kalter, including (1) payment of 100% of the premiums associated with medical/dental/vision insurance coverage, long-term disability, short-term disability, and $50,000 in life insurance; (2) participation in the company's 401(k) plan; (3) reimbursement of training related expenses (including travel, registration fees, books and exam fees); and, (4) 30 days of paid personal time off per calendar year, "accrued at 9.23 hours per two-week pay period."

51.     Kalter accepted Keyfactor's offer of employment and began working for the company on March 4, 2019.

52.     Keyfactor did not provide Kalter with a written commission agreement at any time during her employment with the company.

53.     Throughout Plaintiff's employment, Keyfactor issued paychecks and wage statements to Kalter that contain inaccurate and incomplete information, including by misstating the legal name of Keyfactor as "Certified Security Solutions Inc." or "Key Factor".

54.     Even after Certified Security Solutions Inc. formally changed its name to Keyfactor, Inc. in or around July 2019, the company continued to issue paychecks and wage statements to Kalter from Certified Security Solutions, Inc.

55.     Keyfactor also issued paychecks and wage statements to Kalter that omitted, misstated, or contained inaccurate information concerning (1) the "pay period beginning" and "pay period ending" dates, (2) accrued paid time off (PTO), (3) time off balance, or (iv) pay date.

56.     Kalter was not timely paid all wages due her throughout her employment at Keyfactor.

57.     Kalter was not paid any compensation for work that she performed during the workweek of March 17, 2019 through March 23, 2019.

58.     Keyfactor did not issue a wage statement to Kalter for the workweek of March 17, 2019 through March 23, 2019.

59.     Kalter was not reimbursed for all reasonable and necessary work-related expenses that she incurred during her employment. Kalter was not reimbursed for all of her seminar expenses, hotel accommodations, travel expenses, cell phone, internet usage, tolls and mileage.

60.     Kalter was not paid all of the final wages due her upon termination, including all earned compensation, unpaid salary, bonuses, commissions, and accrued time off.

61.     Kalter was not paid all of the salary or contracted wages owed her for the unpaid workweek beginning on or about February 8 or 9, 2020, or for the unpaid workweek beginning on March 17, 2019.

62.     Kalter was not paid all of the accrued paid time off or accrued vacation due at termination.

63.     Kalter was not paid all of the commissions that she was owed from accounts or customers that she managed, made sales to, or serviced during her employment with Keyfactor.

64.     When Keyfactor terminated Kalter's employment, the company claimed she was bound by a Confidential Information and Inventions Agreement, which purportedly contains several illegal "obligations that shall remain in effect following [Kalter's] exit from Keyfactor." Keyfactor threatened Kalter that she is bound by illegal "no solicitation" and "no competition" provisions for a period of one year following her termination. The Confidential Information and Inventions Agreement also contains an illegal choice of law and venue selection provision.

65.     Kalter sent a letter to Keyfactor's General Counsel on January 8, 2021 exercising her rights under California Labor Code section 925(b) and requesting that Keyfactor agree to void any contract, contractual provision, or agreement that violates Labor Code section 925, including the illegal restrictive covenants that Keyfactor had threatened to enforce following Kalter's termination. Kalter also requested that Keyfactor produce her payroll records and personnel file pursuant to Labor Code sections 226(b) and 1198.5. In response, Keyfactor's outside counsel demanded the return of any company-issued property still in Kalter's possession (nearly one year after Kalter's termination) and further threatened to "contact the police to report the unreturned property as stolen" if Kalter did not immediately comply. Keyfactor did not respond or agree to Kalter's request to void any agreement(s) containing the illegal restrictive covenants that the company had been threatening to enforce against her.

**Keyfactor's and Insight's Illegal Course of Conduct Pays Immediate Dividends**

66.     After terminating Kalter and several other Sales Directors over the age of 40 over

the course of the past 18 months, and notwithstanding the impact of the Covid 19 pandemic on its core business, Keyfactor General Counsel Sybil Bates McCormack proclaimed that "2020 was the company's most profitable year to date."

## Plaintiff's Damages

67.     As a result of Defendants' conduct, Plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to her career, and lost wages, unpaid expenses, and penalties, as well as interest on lost or unpaid wages and benefits at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

68.     As a consequence of Defendants' conduct, Plaintiff has suffered and will suffer psychological and emotional distress, humiliation, embarrassment, and mental and physical pain and anguish, in a sum to be proven at trial.

69.     Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal expenses to remedy the wrongs alleged herein.

## Exhaustion of Administrative Remedies

70.     Plaintiff exhausted her administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing (DFEH) and receiving a DFEH right to sue letter.

## FIRST CAUSE OF ACTION

## Age Discrimination in Violation of Government Code §12900, et. seq.

### (Against all Defendants)

71.     Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

72.      At all times herein, Government Code §12940 *et. seq.* ("FEHA") required Defendants to refrain from discriminating against employees on the basis of age, as well as other protected characteristics.

73.     Plaintiff's age and/or other characteristics protected by FEHA were substantial

- 11 -

COMPLAINT

motivating reasons in Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ Plaintiff in any position, to deprive Plaintiff of the benefits of her employment, and/or to take other adverse employment actions against Plaintiff.

74.     As a proximate result of Defendants' knowing, willful, and intentional discrimination against Plaintiff, Kalter has sustained and continues to sustain substantial losses of earnings and employment benefits, both past and future.

75.     As a proximate result of Defendants' knowing, willful, and intentional discrimination against Plaintiff, Kalter has suffered and continues to suffer humiliation, emotional distress, embarrassment, and mental and physical pain and anguish, all to her damage in a sum according to proof.

76.     Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal expenses. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover her reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## SECOND CAUSE OF ACTION

**Failure to Prevent Discrimination in Violation of Government Code §12900, et. seq.**

**(Against all Defendants)**

77.     Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

78.     Under Government Code §12940(k), it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps to prevent discrimination … from occurring."

79.     During the course of Kalter's employment, Defendants failed to take all reasonable steps to prevent discrimination from occurring and failed to prevent their employees, agents, or representatives from engaging in intentional actions that treated employees over the age of 40 less favorably than younger employees.

80.     Plaintiff was subjected to discrimination on account of her age and her association with other employees who were over the age of 40.

81.     As a proximate result of Defendants' knowing, willful, and intentional

1    discrimination against Plaintiff and failure to take all reasonable steps to prevent that

2    discrimination from occurring, Kalter has sustained and continues to sustain substantial losses of

3    earnings and employment benefits, both past and future.

4         82.    As a proximate result of Defendants' knowing, willful, and intentional

5    discrimination against Plaintiff, Kalter has suffered and continues to suffer humiliation, emotional

6    distress, embarrassment, and mental and physical pain and anguish, all to her damage in a sum

7    according to proof.

8         83.    Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal

9    expenses. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover her reasonable

10   attorneys' fees and costs (including expert costs) in an amount according to proof.

11                          **THIRD CAUSE OF ACTION**

12       **Associational Discrimination in Violation of Government Code §12900, et. seq.**

13                            **(Against all Defendants)**

14        84.    Kalter realleges and incorporates by reference each allegation in the foregoing

15   paragraphs as if fully rewritten herein.

16        85.    Subsection (o) of Government Code §12926 requires defendants refrain from

17   discriminating against any employee because she is associated with someone who is over the age

18   of 40 or any other protected characteristic.

19        86.    The legislative intent, as codified in the statute, does not preclude one who falls

20   within the same protected category as the one with whom that person associates from claiming

21   associational discrimination. The statute merely requires an association, actual or perceived, with

22   one who either has or is perceived to have a protected characteristic, including age.

23        87.    Plaintiff's association with other employees over the age of 40 and/or other

24   employees subjected to intentional age discrimination were substantial motivating reasons in

25   Defendants' decision to terminate Plaintiff's employment, not to retain, hire, or otherwise employ

26   Plaintiff in any position, to deprive Plaintiff of the benefits of her employment, and/or to take

27   other adverse employment actions against Plaintiff.

28        88.    As a proximate result of Defendants' knowing, willful, and intentional

1    discrimination against Plaintiff, Kalter has sustained and continues to sustain substantial losses of

2    earnings and employment benefits, both past and future.

3          89.    As a proximate result of Defendants' knowing, willful, and intentional

4    discrimination against Plaintiff, Kalter has suffered and continues to suffer humiliation, emotional

5    distress, embarrassment, and mental and physical pain and anguish, all to her damage in a sum

6    according to proof.

7          90.    Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal

8    expenses. Pursuant to Government Code §12965(b), Plaintiff is entitled to recover her reasonable

9    attorneys' fees and costs (including expert costs) in an amount according to proof.

10                           **FOURTH CAUSE OF ACTION**

11                             **Breach of Contract**

12                           **(Against all Defendants)**

13         91.    Kalter realleges and incorporates by reference each allegation in the foregoing

14   paragraphs as if fully rewritten herein.

15         92.    Keyfactor, through its agents and employees, agreed to employ Kalter as a District

16   Sales Director for an indefinite duration at the annual rate of at least $145,000 [or $2,788.46 in

17   salary per workweek], plus commissions, with an expected start date in March 2019.

18         93.    Keyfactor represented to Plaintiff that she would earn lucrative sales commissions

19   if she achieved sales targets, with the understanding and acknowledgement by Brunson,

20   Keyfactor's Vice President of Field Operations at the time, that the typical sales cycle (from

21   initiation to closing) at Keyfactor generally ranged from 12 to 18 months.

22         94.    Keyfactor also promised Kalter that she would receive 30 days of personal time off

23   per calendar year, accrued at 9.23 hours per two-week pay period.

24         95.    Keyfactor failed to perform its agreement with Kalter, including (1) failure to pay

25   promised salary compensation to Kalter during the workweek of March 17, 2019 through March

26   23, 2019, (2) failure to pay the proper amount of salary compensation to Kalter for the workweek

27   commencing on February 8 or 9, 2020, (3) failure to pay all accrued paid time off to Kalter at her

28   termination, and (4) failure to pay all commissions owed to Kalter.

96.     As a proximate result of Keyfactor's failure to perform according to the promises and representations that were made to Kalter, Kalter has suffered a loss of employment, compensation, and benefits all to her damage and in an amount according to proof at the time of trial.

97.     Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal expenses. Pursuant to Labor Code §218.5, Plaintiff is entitled to recover her reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

### FIFTH CAUSE OF ACTION

### **Breach of Implied Covenant of Good Faith and Fair Dealing**

### **(Against all Defendants)**

98.     Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

99.     Kalter did all, or substantially all, of the significant things that her agreement with Keyfactor required her to do, except to the extent Keyfactor prevented her performance.

100.     Defendants frustrated Kalter's right to receive the benefits of her agreement with Keyfactor, including by firing her after she had perfected her right to commissions but before they were paid.

101.     Kalter suffered damages caused by Defendants' wrongful acts. Kalter has been damaged in an amount in excess of the jurisdictional limits of this Court, and has suffered and continues to suffer substantial losses in earnings and other employee benefits.

102.     Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal expenses. Pursuant to Labor Code §218.5, Plaintiff is entitled to recover her reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

### SIXTH CAUSE OF ACTION

### **Failure to Pay Minimum Wages in Violation of Labor Code §§1194, 1194.2, and 1197 and**

### **Wage Order 4-2001**

### **(Against all Defendants)**

103.     Kalter realleges and incorporates by reference each allegation in the foregoing

paragraphs as if fully rewritten herein.

104.    Labor Code section 1197 and the applicable wage order make it unlawful to pay an employee less than the minimum wage, as established by the Industrial Welfare Commission, for each hour worked in any workweek.

105.    Labor Code section 1194 entitles an employee receiving less than the minimum wage to recover, in a civil action, the unpaid balance of minimum wages owing, plus interest thereon, reasonable attorneys' fees, and costs of suit.

106.    Labor Code section 1194.2 entitles an employee receiving less than the minimum wage to recover liquidated damages in an amount equal to the unpaid minimum wages and interest thereon.

107.    Kalter performed work for Defendants during the workweek of March 17, 2019 through March 23, 2019.

108.    Kalter was not paid any compensation by Defendants for the work that she performed or suffered or was permitted to work during the workweek of March 17, 2019 through March 23, 2019.

109.    As a result of Defendants' improper pay policy and/or practice, as described herein, Defendants failed to pay Plaintiff any compensation for each of hour of work performed during the workweek of March 17, 2019 through March 23, 2019, and thus failed to pay the minimum wage that Kalter was entitled to, for each hour worked, under Labor Code section 1197 and Wage Order 4-2001.

110.    Plaintiff is informed and believes, and based thereon alleges, that Defendants' failure to pay the minimum wage for each hour worked, as described herein, was willful.

111.    Additionally, as a result of Defendants' failure to pay Plaintiff the minimum wages for all hours worked, Kalter was not timely paid all earned wages as required by Labor Code section 204.

112.    Based on Defendants' conduct, as alleged herein, Defendants and Does 1 through 20 are liable to Plaintiff for unpaid minimum-wage compensation pursuant to Labor Code sections 1194 and 1197, and Wage Order 4-2001, liquidated damages in an amount equal to the

unpaid wages owed to Plaintiff, plus interest, pursuant to Labor Code sections 1194.2, and attorneys' fees and costs of suit, pursuant to Labor Code sections 1194 and 1194.2.

**SEVENTH CAUSE OF ACTION**

**<u>Failure to Pay Accrued Paid Time Off/Vacation in Violation of Labor Code §227.3</u>**

**(Against all Defendants)**

113.    Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

114.    Labor Code section 227.3 provides that "whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served."

115.    Kalter was terminated by Keyfactor on February 10, 2020 without having taken off her vested vacation or personal paid time off.

116.    Keyfactor did not pay all vested vacation or paid time off to Kalter at her final rate of pay in accordance with her contract of employment with Keyfactor or Keyfactor's policies.

117.    As a proximate result of Keyfactor's failure to perform according to the promises and representations that were made to Kalter, Plaintiff has suffered a loss of compensation and benefits, all to her damage and in an amount according to proof at the time of trial.

118.    Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal expenses. Pursuant to Labor Code §218.5, Plaintiff is entitled to recover her reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**EIGHTH CAUSE OF ACTION**

**<u>Failure to Pay all Wages Due at Termination in Violation of Labor Code §201</u>**

**(Against all Defendants)**

119.    Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

120.    An employer is required to provide an employee who is terminated all unpaid

- 17 -

COMPLAINT

wages immediately upon her termination. Labor Code §201.

121.   Defendants did not provide Kalter with all of her final pay and wages immediately upon her termination.

122.   If an employer willfully fails to pay an employee wages according to Labor Code §201, these wages shall continue as a penalty for up to a maximum of 30 days. Labor Code §203.

123.   Defendants willfully failed to pay Kalter her final unpaid wages, entitling her to a 30-day waiting time penalty.

124.   Kalter is entitled to recover interest, reasonable attorney's fees and costs. Labor Code §1194.

**NINTH CAUSE OF ACTION**

**Failure to Provide Accurate Wage Statements in Violation of Labor Code §226**

**(Against all Defendants)**

125.   Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

126.   Labor Code section 226(a) provides: Every employer shall semimonthly or at the time of each payment of wages furnish each employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately, an itemized statement in writing showing, among other things: (1) gross wages earned; (2) total hours worked by the employee; (3) all deductions; (4) the inclusive dates of the period for which the employee is paid; (5) the name and address of the legal entity that is the employer; (6) net wages earned; and, (7) all applicable hourly rates in effect.

127.   Labor Code section 226.3 provides that if an employer knowingly and intentionally fails to provide a statement itemizing, among other things, the full legal name and address of the legal entity that is the employer and the inclusive dates of the period for which the employee is paid, then the employee is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation, up to four thousand dollars ($4,000), as well as an award of costs and attorneys' fees.

128.   Defendants knowingly and intentionally failed to provide Plaintiff with timely and

1    accurate wage and hour statements as required by Labor Code section 226(a).

2        129.    Plaintiff suffered injury as a result of Defendants' knowing and intentional failure

3 to provide her with the wage and hour statements required by law. An employee is deemed to

4 have suffered injury for purposes of Labor Code section 226(a) whenever the employer fails to

5 provide accurate and complete information as required by any one or more of items (1) to (9) of

6 section 226(a), and the employee cannot promptly and easily determine from the wage statement

7 alone one or more of the following: (i) the name and address of the legal entity that is the

8 employer, (ii) the amount of the gross wages or the net wages paid to the employee during the pay

9 period, or (iii) which deductions the employer made from gross wages to determine the net wages

10 paid to the employee.

11 **TENTH CAUSE OF ACTION**

12 **Failure to Reimburse Business Expenses in Violation of Labor Code §2802**

13 **(Against all Defendants)**

14        130.    Kalter realleges and incorporates by reference each allegation in the foregoing

15 paragraphs as if fully rewritten herein.

16        131.    Pursuant to Labor Code section 2802, Defendants must indemnify Plaintiff for the

17 expenses and losses incurred in direct consequence of the discharge of her duties, or her

18 obedience to the directions of the employer during the performance of her job duties. The purpose

19 of this statute is to prevent employers from passing their operating expenses on to their

20 employees.

21        132.    In violation of Labor Code section 2802, Defendants did not indemnify or

22 reimburse Plaintiff for seminar expenses, hotel accommodations, travel expenses, cell phone

23 expenses, internet usage, tolls, and mileage that she reasonably and necessarily incurred in

24 connection with her job duties on behalf of Defendants and/or her obedience to the directions of

25 Keyfactor.

26        133.    Keyfactor told Kalter at the outset of her employment that the company would not

27 reimburse certain business-related expenses (including but not limited to travel, registration fees,

28 books and exam fees) if she departed the company within one year of incurring the expenses,

violating Labor Code section 2804, which prohibits waiver of an employee's rights under section 2802.

134.    Plaintiff seeks to recover these expenses that were not reimbursed by Defendants, plus interest thereon from the date the expense was incurred, reasonable attorneys' fees, and costs, in an amount to be proven at trial.

### ELEVENTH CAUSE OF ACTION

### Retaliation for Engaging in Protected Activity

### (Against all Defendants)

135.    Kalter realleges and incorporates by reference each allegation in the foregoing paragraphs as if fully rewritten herein.

136.    Labor Code § 1102.5(b) prohibits retaliation against an employee or former employee where "the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency … who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation."

137.    By threatening to "contact the police" shortly after receiving Kalter's letter in which she exercised her rights under Labor Code §§ 925, 226(b), and 1198.5, Keyfactor violated Labor Code §1102.5.

138.    As a proximate result of Defendants' knowing, willful, and intentional retaliatory conduct against Plaintiff, Kalter has sustained and continues to sustain substantial losses of earnings and employment benefits, both past and future.

139.    As a proximate result of Defendants' knowing, willful, and intentional retaliatory conduct against Plaintiff, Kalter has suffered and continues to suffer humiliation, emotional distress, embarrassment, and mental and physical pain and anguish, all to her damage in a sum according to proof.

140.    Plaintiff has incurred and continues to incur attorneys' fees, costs, and legal

- 20 -
COMPLAINT

expenses. Pursuant to Labor Code §1102.5(j), Plaintiff is entitled to recover her reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

**TWELFTH CAUSE OF ACTION**

**Unfair Business Practices in Violation of Business & Professions Code §17200**

**(Against all Defendants)**

141.   Business & Professions Code §17000 *et seq*. was enacted "to safeguard the public … and to foster and encourage competition by prohibiting unfair, dishonest, deceptive, destructive, fraudulent and discriminatory practices by which fair and honest competition is destroyed and prevented."  This chapter is to be "liberally construed."  Bus. & Prof. Code §17002.

142.   Business & Professions Code §17200 prohibits "any unlawful, unfair or fraudulent business act or practice." An unfair business practice occurs when that practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.

143.   Defendants, and each of them, are "persons" as defined under Business & Professions Code §17021.

144.   Each of the directors, officers and/or agents of Defendants Keyfactor and Insight are responsible for the acts of the others as set forth in Business & Professions Code §17095.

145.   Defendants, and each of them, develops, builds, maintains, advertises and operates a business in California which sell/service an "article or product" as defined in Business & Professions Code §§17022 and 17024.

146.   A claim of unfair business practice also can be predicated upon public policy tethered to a specific constitutional, statutory or regulatory provision.

147.   The statutory violations alleged above, including of FEHA and the Labor Code, are unfair business practices within the meaning of the Unfair Competition law, Business & Professions Code section 17200 *et. seq.*

148.    Defendants' termination of Kalter's employment and the timing of her termination to frustrate her right to earned commissions, as well as the systematic termination of other Sales

Directors over the age of 40, was unlawful, unfair, fraudulent, immoral, unethical, oppressive, and anti-competitive.

149.    The actions of Defendants, whether by terminating Kalter's employment in violation of FEHA and public policy, and/or terminating other employees over the age of 40 for anticompetitive and unlawful reasons, were unlawful, unfair, and fraudulent, and those actions also constitute an unfair trade/business practice(s) in violation of California law. Bus & Prof. Code §17200 *et seq*. In addition, Defendants' violations of the Labor Code and applicable Wage Orders also constitute unfair trade/business practice(s) in violation of California law.

150.    Kalter is informed and believes that by the above-mentioned actions, Defendants engaged in conduct that was designed to give each of them an unfair business advantage over other persons doing business in the State of California, thereby injuring competitors and/or hindering competition.

151.    As a direct and proximate result of Defendants' conduct, Kalter is entitled to restitution, disgorgement, and injunctive relief, including, but not limited to, reinstatement under Business & Professions Code §17203. Kalter further requests attorneys' fees and costs pursuant to Code of Civil Procedure §1021.5 upon proof she has acted in the public interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jacqueline Kalter prays for judgment against Defendants, and each of them, as follows:

1. For compensatory damages, including, but not limited to, past and future economic and non-economic damages, back pay, front pay, lost benefits, bonuses, commissions, long-term incentive pay, lost stock or equity and promotion;

2. For restitution and injunctive relief, including, but not limited to, reinstatement;

3. For punitive damages;

4. For pre-judgment and post-judgment interest;

5. For all applicable statutory penalties;

6. For reasonable attorneys' fees and costs; and

7.   For such other relief the Court deems just and proper.

DATED:  August 9, 2021

Plaintiff hereby demands a trial by jury on all issues that are capable of being tried to a jury.

DATED:  August 9, 2021

Respectfully submitted,

MARK F. HUMENIK
Polk Kabat LLP

_/s/ Mark Humenik_

Attorneys for Plaintiff, Jacqueline Kalter

- 23 -
COMPLAINT